UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MACY'S WEST STORES, INC. and MACY'S RETAIL HOLDINGS, INC., | Civil Action No: |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| ONE BLOW DRY BAR, INC. and AURELIO VENTRELLA, JR., | **Jury Demand** |
| Defendants. | |

---

Plaintiffs Macy's West Stores, Inc. ("MWSI") and Macy's Retail Holdings, Inc. ("MRHI") (MWSI and MRHI are collectively and individually referred to herein as "Plaintiffs" or "Macy's"), by and through its attorneys, Amster, Rothstein & Ebenstein, LLP, for its complaint against Defendants One Blow Dry Bar, Inc. and Aurelio Ventrella, Jr. (collectively and individually, "Defendants" or "OBDB") allege as follows:

## NATURE OF THE ACTION

1. This is an action at law and in equity for trademark infringement, false designation of origin, false advertising, unfair competition, and dilution, all arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*., federal and state common and statutory law, and breach of contract arising under the laws of the State of New York.

2. MWSI is the owner and, along with related entities, the user of the registered trademark MACY'S in all forms and formatives, as applied to, *inter alia*, retail department stores services and online retail department store services (collectively and individually, the "MACY'S Mark").

668605.5

3.     MRHI is the owner of the building known as Macy's Herald Square Department Store located at 151 West 34th Street, New York, NY 10001 (the "Building").

4.     Defendants have willfully and unlawfully infringed and diluted the MACY'S Mark, and committed unfair competition and false advertising with the clear and unmistakable intent and effect of causing confusion, mistake, and deception as to source of origin among customers and potential customers.

5.     Defendants have breached their contractual obligations to Macy's arising from a License Agreement.

6.      Plaintiffs ask this Court to enjoin the infringement, false designation of origin, false advertising, dilution, and unfair competition caused by Defendants' wrongful activities and to compensate Plaintiffs for the damages which Defendants have caused and the unjust enrichment it has received.

## THE PARTIES

7.     Plaintiff MWSI is corporation organized and existing under the laws of the State of Ohio having an office and principal place of business at 7 West 7th Street, Cincinnati Ohio 45202.

8.     Plaintiff MRHI is corporation organized and existing under the laws of the State of New York having an office and principal place of business at 151 West 34th Street, New York, New York 10001.

9.     Upon information and belief, Defendant One Blow Dry Bar, Inc. is a corporation organized and existing under the laws of the State of New Jersey with a place of business at 116 Broad Street, Red Bank, New Jersey 07701.

10.    Upon information and belief, Defendant Aurelio Ventrella, Jr. is an individual who is domiciled in the State of New Jersey and operates a place of business at 116 Broad Street, Red Bank, New Jersey 07701.  Mr. Ventrella is believed to be the active, moving, and dominant force behind the unlawful activities of Defendant One Blow Dry Bar, Inc. and has committed the unlawful acts alleged in this Complaint for the benefit of One Blow Dry Bar, Inc. and for his

668605.5                              2

own benefit.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action under the Trademark Act of 1946, 15 U.S.C. § 1121 and the Judicial Code, 28 U.S.C. §§ 1331 and 1338.

12. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, which arise out of the same nucleus of operative fact as the substantial federal law claims to which they are joined.

13. This Court has jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different states.

14. Defendants are subject to this Court's personal jurisdiction pursuant to Rule 4 of the Federal Rules of Civil Procedure because they do business in this judicial district and expressly aim the acts alleged in this Complaint at this district.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

A. <u>Macy's and its Trademark Rights</u>

16. Since at least as early as 1858, Macy's, directly or through its subsidiaries, operates Macy's department stores and retail stores under the MACY'S Mark.

17. Macy's has extensively used and promoted its services in United States commerce under the MACY'S Mark. Macy's has also devoted substantial time, money and effort in the establishment and maintenance of high standards of quality for the services offered and marketed under the MACY'S Mark. As a result, Macy's has established substantial recognition and secondary meaning in the aforesaid mark, which identifies Macy's and its services and represents the valuable goodwill of Macy's in its business.

18. The MACY'S Mark is famous -- indeed it is one of the most famous and well-known marks in the United States.

19. Macy's rights in the MACY'S Mark are valid, subsisting, and have never been abandoned.

20. Macy's is the owner of, *inter alia*, U.S. Trademark Registration No. 922,972 for the MACY'S Mark ("Macy's Registration"), issued in 1971, as applied to "department store services." A true and correct copy of Plaintiffs' U.S. Trademark Registration No. 922,972 is attached hereto as Exhibit A.

21. Registration No. 922,972 is incontestable pursuant to Section 15 of the Trademark Act, 15 U.S.C. §1065.

22. Macy's Registration is in full force and effect and have never been abandoned.

23. As part of Macy's department store services, Macy's licenses space within its retail stores to various third parties, which offer services to Macy's customers. Representative examples of such services include food services, nail services, and hair salon services.

B.   The License Agreement

24. Macy's, as licensor, and OBDB, as licensee, entered into a Department License Agreement dated May 5, 2015 (the "Initial Agreement"), which was amended by First Amendment to Department License Agreement dated as of April 4, 2016 ("First Amendment"), and further amended by Second Amendment to Department License Agreement dated as of June 15, 2016 ("Second Amendment", together with the Initial Agreement and First Amendment, the "License Agreement").

25. Pursuant to the License Agreement, OBDB received a license from Macy's to use approximately 1,810 square feet of selling space on the lower level of the Macy's flagship store in Herald Square in New York City (the "Selling Space") to operate, among other things, a hair blow drying business.

26. The License Agreement did not include authorization to use the MACY'S Mark in any other physical location or for mobile hair styling services outside of the Macy's store location.

27. The License Agreement required OBDB to pay Macy's a minimum license fee of

$22,500 per "Accounting Period", plus other amounts owing under the License Agreement.

C.     OBDB Fails to Pay License Fees

28.    As of November 1, 2015, OBDB had failed to pay license fees and expenses to Macy's for multiple Accounting Periods totaling $55,033.16.  As a result, Macy's sent OBDB a Notice of Non-Payment demanding payment of such outstanding fees.

29.    On November 15, 2016, OBDB paid Macy's $55,000 leaving a shortfall of $33.16.

30.    Thereafter, OBDB failed to pay its license fees due for multiple Accounting Periods.

31.    Macy's sent to OBDB another Notice of Non-Payment demanding payment of the outstanding license fees.

32.    On December 20, 2016, Macy's sent OBDB an additional Notice of Breach informing OBDB that, among other things, it was in default of the License Agreement due to its continued failure to pay license fees when due.  Despite the foregoing, OBDB failed to cure the overdue license fees and failed to pay licensee fees going forward.

33.    Due to OBDB's continued failure to pay, pursuant to Section 10.2 of the License Agreement, Macy's sent a Notice of Termination dated March 27, 2017, revoking OBDB's license under the License Agreement as of April 15, 2017 and demanding that OBDB vacate and surrender the Selling Space.

34.    OBDB did not voluntarily vacate the premises, requiring Macy's to commence an eviction proceeding in the Civil Court of the City of New York.

35.    Ultimately, a Warrant of Eviction was ordered by the Civil Court of the City of New York on or about September 12, 2017, and OBDB vacated the premises in early October 2017.

D.     Defendants' Infringing Activities

36.    After the Warrant of Eviction was issued, and after vacating the Building, OBDB nonetheless continued to falsely claim that it was associated with and/or affiliated with Macy's,

and that it operated within the Macy's department store, when it was not.

37. OBDB falsely states on its website at www.oneblowdrybar.com that "oneblowdrybar located [sic] inside Macy's Herald Square in Manhattan." A representative true and correct screen shot dated December 11, 2017, is attached as Exhibit B.

38. OBDB falsely states on its website at www.oneblowdrybar.com a false association with Macy's by writing: "mobile blow out hair salons are glamorizing the Macy's shopper by bestowing affordable mobile blowout hair styling to all!" A representative true and correct screen shot dated December 11, 2017, is attached as Exhibit C.

39. OBDB falsely asserts on its website at www.oneblowdrybar.com a "Brazilian Blowout Bar at Macy's New York" A representative true and correct screen shot dated December 11, 2017, is attached as Exhibit D.

40. OBDB falsely asserts to customers that it remains associated with Macy's, and operates a retail location within the Building, when it does not.

41. On November 16, 2017, well after the Warrant of Eviction was issued and after vacating the Building, OBDB falsely stated that it was "located at Macy's Herald Square" by writing on Yelp.com:

> Alex, personally wanted to thank you so much for making oneblowdrybar located at Macy's Herald Square, your blow dry bar hair destination!....

A true and correct copy of a screen shot of the Yelp.com comment page is attached as Exhibit E.

42. On November 26, 2017, well after the Warrant of Eviction was issued and after vacating the Building, OBDB posted on its Facebook page a series of photographs of the former licensed location at Macy's Herald Square, under the handle "oneblowdrybar (Macy's Herald Square)" with the comment: "[smiley face] feeling thankful at Macy's (New York)." A true and correct copy of a screen shot of the Facebook page is attached as Exhibit F.

43. On November 25, 2017, well after the Warrant of Eviction was issued and after vacating the Building, OBDB posted on its Facebook page the following comment, along with

668605.5                                6

multiple photographs of the former licensed location at Macy's Herald Square:

> "New York City's popular blow dry chain brand called oneblowdrybar has opened their blow out hair salon on the Macy's One Below at Macy's Herald Square in the Garment District of New York City."

A true and correct copy of a screen shot of the Facebook page is attached as Exhibit G.

44. Upon information and belief, well after the Warrant of Eviction was issued and after vacating the Building, a customer made an appointment for December 12, 2017 for hair services at the Macy's location through the website www.oneblowdrybar.com, and paid in advance for the service. The customer then received a "cancellation notice" on December 11, 2017 from "oneblowdrybar 34th Street, Macy's Herald Square," which stated:

> We have been trying to get in contact with you numerous times regarding your appointment tomorrow, but we are told it's out of service. Unfortunately, the online booking system has a glitch, and has overbooking appointments. We have no availability in store...."

45. Upon information and belief, this statement is a direct and intentional lie told to a consumer, intending to make the consumer believe that OBDB had a location within Macy's store, but it was temporarily not able to provide hair care services.

46. Upon information and belief, the customer who was lied to in the facts asserted in Paragraph 44 of this Complaint was "angry" and went to Macy's Customer Service to complain.

47. Further, upon information and belief, a customer made an appointment for December 20, 2017 for hair services at the Macy's location through the website www.oneblowdrybar.com, and paid in advance for the services.

48. Subsequently, the customer received a "cancellation notice" from OBDB.

49. The customer referred to in Par. 47 above, lodged a formal complaint with Macy's Customer Service.

50. OBDB's website at www.oneblowdrybar.com uses the crude statement "We know how to blow! It even says so in our name!" OBDB continues to use this statement on its

668605.5                                   7

website along with its unauthorized use of the MACY'S Mark.

52. As evidenced by the above allegations, Defendants, willfully and without the consent of Macy's, continue to use the MACY'S Mark in connection with their advertising which falsely creates the impression that Defendants' services are conducted by or in association with Macy's (*e.g.*, Defendants are an authorized representative of Macy's, are a business partner of Macy's, or are otherwise affiliated with Macy's), and also tarnishes Plaintiffs' reputation.

**COUNT I**
<u>TRADEMARK INFRINGEMENT</u>
(15 U.S.C. § 1114)

52. Plaintiffs incorporate by reference as if fully set forth herein the averments contained within all preceding paragraphs.

53. Defendants infringe Macy's Registration, a trademark registered in the United States Patent and Trademark Office, in violation of the Trademark Act of 1946, 15 U.S.C. § 1051, *et. seq.*, particularly under 15 U.S.C. § 1114(1).

54. Defendants use a mark identical to the mark in Macy's Registration (the "Infringing Mark").

55. Defendants' use of the Infringing Mark is likely to cause confusion and mistake in the minds of the purchasing public, and in particular, tends to and does falsely create the impression that Defendants' services are offered in association with Plaintiffs (e.g., Defendants are an authorized representative or dealer of Macy's goods or services, are a business partner of Macy's, or are otherwise affiliated with Macy's) and therefore constitutes a violation of Macy's registered trademark within the terms of Section 32 of the Trademark Act, 15 U.S.C. § 1114.

56. Upon information and belief, Defendants' infringement has been willful and intentional.

57. As a direct and proximate result of Defendants' illegal activities as alleged above, Plaintiffs has been severely damaged. Defendants' acts in infringing Macy's Registration have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined by this Court.

## COUNT II
### FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, AND FALSE ADVERTISING
(15 U.S.C. § 1125(a))

58. Plaintiffs incorporate by reference as if fully set forth herein the averments contained within all preceding paragraphs.

59. This Claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 *et. seq.*, particularly under U.S.C. § 1125(a), and alleges the use in commerce of false designations of origin, false descriptions and representations, and false advertising.

60. The MACY'S Mark has come to have a secondary meaning indicative of origin, relationship, sponsorship, and/or association with Plaintiffs.  Defendants' use of the Infringing Mark is likely to create confusion and to deceive consumers as to the affiliation, source of origin, sponsorship and/or authorization of Defendants' business.  Specifically, the purchasing public is likely to mistakenly believe that Defendants' services originate and/or are affiliated, sponsored or authorized by Plaintiffs and, therefore, to use Defendants' services based on that erroneous belief.

61. Defendant's adoption and continued willful use of a mark that is identical to that of Plaintiffs' as herein above alleged, constitutes a use in interstate commerce and a false designation of origin or false and misleading description or representation of goods and/or services in commerce, with knowledge of the falsity, and deceptive misdescription, which is likely to cause confusion, mistake and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities and origin of Defendant's products, services, and commercial activities, within the meaning and in violation of 15 U.S.C. §1125(a).

62. Defendants' use of the Infringing Mark and false statements made in the advertisement of its services offered in conjunction with the MACY'S Mark, falsely suggest that Defendants have a connection to the MACY'S Mark and its famous history.  The purchasing public is likely to be deceived as to Defendants' affiliation with Macy's, and therefore, to use Defendants' services in reliance on those erroneous beliefs.

63. As a direct and proximate result of Defendants' illegal activities as alleged above, Plaintiffs have been severely damaged. Defendants' aforesaid acts have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined by this Court.

## COUNT III
### FEDERAL TRADEMARK DILUTION
(15 U.S.C. § 1125(c))

64. Plaintiff incorporates by reference as if fully set forth herein the averments contained within all preceding paragraphs.

65. This Claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 et. seq., particularly under 15 U.S.C. § 1125(c), and alleges the commercial use in commerce by Defendants of the Infringing Mark, resulting in dilution of the mark in Macy's Registration.

66. As a result of Macy's extensive advertising and promotional efforts, the MACY'S Mark is recognized nationwide by the trade and purchasing public as synonymous with the highest quality goods and services.

67. The MACY'S Mark is famous and of inestimable value to Macy's and is relied upon by the trade and the purchasing public to identify and designate Macy's retail department store services, online retail store services, and related goods and services and to distinguish them from the goods and services of others.

68. Defendants' use in commerce of the Infringing Mark is likely to cause dilution of the distinctive quality of the mark in Macy's Registration.

69. Defendants began their use of the Infringing Mark in commerce after the MACY'S Mark became famous. Such use of the Infringing Mark commenced recently, more than a century after Macy's began use of the MACY'S Mark.

70. Defendants' services are of inferior quality, and therefore tarnish Macy's goodwill in MACY'S Mark.

71. Upon information and belief, Defendants' commercial use of the Infringing Mark

is continuing with the willful intent to trade upon Plaintiffs' reputation and to cause dilution of the mark in Macy's Registration, all to the detriment and damage of Plaintiffs.

72. Defendants' use of the Infringing Mark along with crude statements has caused and/or is likely to cause dilution by blurring and/or dilution by tarnishment of the mark in Macy's Registration.

73. As a direct and proximate result of Defendants' illegal activities as alleged above, Plaintiffs have been severely damaged. Defendants' aforesaid acts in diluting the mark in Macy's Registration have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined by this Court.

## COUNT IV
### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

74. Plaintiff incorporates by reference as if fully set forth herein the averments contained within all preceding paragraphs.

75. This Claim arises under the common law of the State of New York and alleges willful and intentional common law trademark infringement and unfair competition by Defendant.

76. As more fully alleged above, the continued use by Defendants of the Infringing Mark constitutes passing off, unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices wherein Defendants' conduct is likely to cause confusion in the trade as to the source of Defendants' services and/or is likely to lead the public to believe that Defendants and their services are in some way connected with Plaintiffs when, in fact, they are not, all to the detriment of Plaintiff sand in violation of the common law of the State of New York.

77. As a direct and proximate result of Defendants' illegal activities as alleged above, Plaintiffs have been severely damaged. Defendants' aforesaid acts of infringement and unfair competition have caused, and will continue to cause, irreparable harm to Plaintiffs unless

enjoined by this Court.

## COUNT V
### UNFAIR TRADE PRACTICES
(New York General Business Law § 360-1)

78.     Plaintiffs incorporate by reference as if fully set forth herein the averments contained within all preceding paragraphs.

79.     Plaintiffs, on behalf of the general public, as well as for itself seeks recovery from Defendants for violation of New York General Business Law § 360-1, *et seq.*

80.     By virtue of Defendants' unauthorized use of the Infringing Mark, such use trading on the goodwill associated with Plaintiffs, Defendants have misled and will continue to mislead the public into assuming a connection between Plaintiffs and Defendants' services.

81.     By falsely suggesting a continued connection with or sponsorship by Plaintiffs, Defendants are likely to cause public confusion constituting unfair competition within the meaning of New York Business Law § 360-1.

82.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

83.     Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

## COUNT VI
### NEW YORK ANTI-DILUTION STATUTE
(New York General Business Law § 368-d)

84.     Plaintiffs incorporate by reference as if fully set forth herein the averments contained within all preceding paragraphs.

85.     Plaintiffs, on behalf of the general public, as well as for itself seeks recovery from Defendants for violation of New York General Business Law § 368-d.

86.     MWSI is the exclusive owner of the MACY'S Mark referenced herein.

87. The MACY'S Mark is famous and inherently distinctive.

88. Defendants' continued unauthorized use of the MACY'S Mark, along with crude statements in their marketing and promotion of their services, is diluting the distinctive quality of the MACY'S Mark and the goodwill associated therewith.

89. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of Defendants' continued unauthorized use of Plaintiffs' famous and distinctive MACY'S Mark.

90. Defendants' conduct will continue unless enjoined by this Court.

91. Plaintiffs have no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

92. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of its wrongful acts in an amount thus far not determined.

## COUNT VII
### MISAPPROPRIATION AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

93. Plaintiffs incorporate by reference as if fully set forth herein the averments contained within all preceding paragraphs.

94. Defendants have used the MACY'S Mark in bad faith and without the permission of Plaintiffs.

95. Defendants' aforesaid acts constitute misappropriation of Plaintiffs' property rights, goodwill and reputation, and unfair competition under the common law of the State of New York.

96. As a result, Plaintiffs have, and continue to, suffer damage to its reputation and goodwill, as well as injury to their customers.

## COUNT VIII
### BREACH OF CONTRACT

97. Plaintiffs incorporate by reference as if fully set forth herein the averments contained within all preceding paragraphs.

98. The License Agreement entered into by Macy's and OBDB are valid contracts consented to by the parties, for which good and valuable consideration was given.

99. Macy's provided and otherwise performed all of its obligations under the License Agreement.

100. Pursuant to the License Agreement, OBDB is obligated to pay Macy's a license fee, plus other amounts due under the License Agreement.

101. OBDB failed to pay Macy's the license fees due to Macy's under the License Agreement for multiple Accounting Periods.

102. Macy's has demanded payment by OBDB of the funds owed to Macy's, but OBDB has refused to pay.

103. OBDB's failure to remit the funds owed to Macy's constitutes a breach of the License Agreement.

104. As a direct and proximate result of OBDB's actions, Macy's has been damaged and is entitled to relief in an amount to be determined at trial, currently estimated to be at least $250,000, plus interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment as follows:

1. That a preliminary and permanent injunction be issued enjoining Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them:

    (a) from using the MACY'S Mark or any marks confusingly similar thereto in connection with sale or offering of goods and services;

    (b) from falsely advertising a connection with Macy's and/or the MACY'S Mark;

  (c) from using any logo, trade name, trademark, or service mark, which may be calculated to falsely represent or which has the effect of falsely representing that goods and/or services of Defendants are affiliated with, sponsored by, authorized by or in any way associated with Plaintiffs;

  (d) from using the MACY'S Mark or from otherwise infringing the MACY'S Mark; and

  (e) from otherwise unfairly competing with Plaintiffs or infringing Plaintiffs' rights in and to the MACY'S Mark.

2. That Defendants be required to remove from use any web sites, physical or electronic advertisements, collateral, or promotional materials bearing the MACY'S Mark.

3. That Defendants be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unfair competition and infringement of Plaintiffs' registered and common law MACY'S Mark, and to account to Plaintiffs for all gains, profits and advantages derived by Defendants by virtue of its infringement, and/or that Plaintiffs be awarded Defendants' profits pursuant to 15 U.S.C. § 1117 and state common and statutory law.

4. That the monetary award to Plaintiffs be increased based on willful infringement pursuant to 15 U.S.C. § 1117.

5. That the Court find this case to be exceptional under federal and common law.

6. For the sum of at least $250,000 for breach of contract.

7. For pre-judgment and post-judgment interest at the maximum legal rate.

8. For attorney fees and costs.

9. For such other and further relief as to the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: January 4, 2018              Respectfully submitted,

AMSTER, ROTHSTEIN & EBENSTEIN LLP

By: */s/ Richard S. Mandaro*
Chester Rothstein
Richard S. Mandaro
Jessica Capasso
90 Park Avenue
New York, New York  10016
Tel: (212) 336-8000
Fax: (212) 336-8001
crothstein@arelaw.com
rmandaro@arelaw.com
jcapasso@arelaw.com

**ATTORNEYS FOR PLAINTIFFS
MACY'S WEST STORES, INC. AND
MACY'S RETAIL HOLDINGS, INC.**